UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER LEE GILLEN,

        Petitioner,

                                CASE NO. 4:13-CV-11354

v.                           JUDGE TERRENCE G. BERG
                                MAGISTRATE JUDGE PAUL J. KOMIVES

STEVEN RIVARD,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    *Exclusion of Note* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        3.    *Admission of Expert Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*      \*      \*      \*      \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.   REPORT:

A.   *Procedural History*

       1.    Petitioner Walter Lee Gillen is a state prisoner, currently confined at the St. Louis

Correctional Facility in St. Louis, Michigan.

2.      On April 4, 2011, petitioner was convicted of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(a), following a jury trial in the Kent County Circuit Court.  On April 27, 2011, he was sentenced to a term of 25-37½ years' imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT REVERSIBLY ERRED WHEN IT RULED THAT THE RAPE SHIELD ACT PROHIBITED A NOTE WRITTEN BY ONE OF THE ALLEGED VICTIMS FROM BEING INTRODUCED INTO EVIDENCE AND THEREBY VIOLATED DEFENDANT'S FOURTEENTH AMENDMENT RIGHT TO PRESENT A DEFENSE AND VIOLATED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION.

II.     DEFENDANT'S RIGHT TO A FAIR TRIAL AND HIS RIGHT TO HAVE THE FACT FINDER DETERMINE THE ULTIMATE ISSUE OF GUILT OR INNOCENCE WERE VIOLATED BY THE TESTIMONY OF AN EXPERT WITNESS THAT THE CHILDREN HAD SUFFERED "PROBABLE" PEDIATRIC SEXUAL ABUSE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Gillen*, No. 304350, 2012 WL 1698376 (Mich. Ct. App. May 15, 2012) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Gillen*, 493 Mich. 857, 820 N.W.2d 786 (2012).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 27, 2013.  As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state courts.

6.      Respondent filed his answer on September 20, 2013.  He contends that petitioner's claims are without merit.  In addition, he contends that petitioner's first claim is moot, and that petitioner's second claim is procedurally defaulted.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner was charged with three counts of CSC-I involving two victims under the age of

13.  He was acquitted of two counts, but convicted of one count involving one of the victims.  The

evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> The incidents in this case occurred roughly between June 2009 and July 2010.
> B.R. turned 11 during that time period. A.R. turned 13 in June 2010. Defendant was
> friends with the mother of the victims. B.R. testified to multiple acts of penetration
> by defendant. A.R. also testified that defendant engaged in acts of penetration with
> her. Both girls were interviewed by a medical social worker and Detective Kelli
> Braate and the interviews were largely consistent with their testimony. Both girls
> were also examined by Dr. Cheryl Ann Tamburello. The physical examinations were
> normal, but Dr. Tamburello diagnosed both girls with "probable pediatric sexual
> abuse with a normal exam." If Dr. Tamburello had not known of the allegations, she
> would not have suspected abuse and the diagnoses would have been "normal."
> Defendant's interview with Detective Braate was played for the jury. In it he
> indicated there was sexual contact between himself and the girls and that at one point
> B.R.'s mouth was on his penis. Defendant was convicted of one count of first-degree
> CSC involving conduct with B.R.

*Gillen*, 2012 WL 1698376, at *1.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>     (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus,

4

"[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Analysis*

Petitioner's habeas application raises two evidentiary claims.  First, he contends that he was denied his rights to present a defense and to cross-examine the witnesses by the exclusion of a note written by A.R.  Second, he contends that he was denied a fair trial by the admission of expert testimony that the victims suffered "probable pediatric sexual abuse with a normal exam."  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.

6

1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a meaningful defense. As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408. Although the right

7

to present a defense is fundamental, it is not absolute.  Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused."  *Scheffer*, 523 U.S. at 308.  A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315).  Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court).

The Supreme Court's "Confrontation Clause cases fall into two broad categories:  cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam).  The latter category, which is implicated here, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  Thus, in cases where the trial court has restricted cross-examination in some manner,

"the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).  However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Fensterer*, 474 U.S. at 20.  The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166.  Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986).  Further, even if a restriction on cross-examination amounts to a violation of the confrontation right, such an error may be harmless.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Finally, a habeas petitioner who establishes a constitutional error is entitled to habeas relief only if the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also*, *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (explaining that *Brecht* harmless error standard applies on habeas review regardless of whether or under what standard the state court conducted harmless error review).[1]

---

[1]Respondent explicitly argues in his answer that the error was harmless.  Thus, this is not a case in which the Court must decide whether to consider the matter *sua sponte*.  *See Gover v. Perry*, 698 F.3d 295, 300-01 (6th Cir. 2012).

2.    *Exclusion of Note*

Petitioner first contends that he was denied his right to present a defense and to confront the

witnesses by the trial court's exclusion of a note written by A.R.  As explained by the court of

appeals:

> During trial, defendant objected to the trial court's exclusion of a note written
> by A.R. in March 2010.  Part of the note appeared to be written by A.R. and part by
> a boy.  The note is sexual in nature and references a request for the victim to pull
> down her pants and her reply, inviting sexual acts.  Defendant sought to have the
> note admitted to show that the victims were over-sexualized and knew a lot about
> sex.

*Gillen*, 2012 WL 1698376, at *1.  Relying on Michigan's rape-shield statute,[2] the court concluded

that the evidence was properly excluded.  The court reasoned:

> The rape shield statute generally excludes evidence of the victim's sexual
> conduct with people other than defendant because the Legislature has determined
> that, in most cases, that evidence is irrelevant. *People v. Arenda*, 416 Mich. 1, 10;
> 330 NW2d 814 (1982); MCL 750.520j. As to evidence to show a victim's

---

[2]"Like most States, Michigan has a 'rape-shield' statute designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." *Michigan v. Lucas*, 500 U.S. 145, 146 (1991). Michigan's rape shield law provides:

> Evidence of specific instances of the victim's sexual conduct, opinion
> evidence of the victim's sexual conduct, and reputation evidence of the victim's
> sexual conduct shall not be admitted under sections 520b to 520g [the sexual conduct
> offense provisions] unless and only to the extent that the judge finds that the
> following proposed evidence is material to a fact at issue in the case and that its
> inflammatory or prejudicial nature does not outweigh its probative value:
>> (a) evidence of the victim's past sexual conduct with the actor;
>> (b) evidence of specific instances of sexual activity showing the source or
> origin of semen, pregnancy, or disease.

MICH. COMP. LAWS § 750.520j(1).  The statute further provides that, if a defendant seeks to introduce evidence under (a) or (b), he must give notice of his intent to do so within ten days of the arraignment.  *See id.* § 750.520j(2).  Even where evidence falls within (a) or (b), the defendant must show that the evidence is "material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."  *Id.* § 750.520j(1); *see also*, *People v. Adair*, 452 Mich. 473, 481-82, 550 N.W.2d 505, 509-10 (1996).  In such a case, "the focus shifts to materiality and balancing probative value against prejudice."  *Id.* at 482, 550 N.W.2d at 510.

> knowledge, "information concerning the victim's past sexual experience is clearly
> inadmissible when offered to explain her familiarity with sexual matters in a manner
> not inculpatory of defendant." *People v. Byrne*, 199 Mich.App 674, 678; 502 NW2d
> 386 (1993) (citation omitted). Thus, the evidentiary decision to exclude the evidence
> was not an abuse of discretion.

*Gillen*, 2012 WL 1698376, at *1. The court of appeals further concluded that the exclusion of the

note did not deprive petitioner of his right to present a defense, explaining that "[t]he note . . . was

minimally relevant to defendant's defense because it did not involve defendant, his culpability, or

his interactions with either B.R. or A.R. And, it was written during the time frame defendant was

allegedly engaging in sexual contact with the victims." *Id*. at *2. Finally, the court of appeals

rejected petitioner's confrontation claim, concluding that even if there was error, it was harmless

"because defendant was acquitted on the charges concerning A.R. Further, the note was minimally

relevant and defendant cross-examined A.R. and B.R. There was substantial evidence against

defendant because the testimony of both B.R. and A.R. described his conduct, to a significant extent

their testimony was consistent with their conversations with the social worker and Detective Braate,

and defendant's recorded statements established that there was sexual contact and that B.R. put her

mouth on his penis." *Id*. These determinations were reasonable.

Petitioner cannot show that the exclusion of the note deprived him of his right to present a

defense by "omitt[ing] evidence [that evaluated in the context of the entire record] creates a

reasonable doubt that did not otherwise exist." *Blackwell*, 459 F.3d at 753 (internal quotation

omitted). As the court of appeals observed, the note was relevant only to a collateral matter–the

victims' sexual knowledge. It did not address directly petitioner's interactions with A.R. or B.R.

And even on this collateral matter, the evidence was only marginally relevant. The note was written

during the time in which petitioner was engaging in sexual contact with the victims, and thus had

limited probative value in showing that they acquired their sexual knowledge from a source other than him, which is the only point that would support his defense. Further, because the note was written by A.R., it had no probative value in showing B.R.'s sexual knowledge. And, as noted above, petitioner was acquitted of the charges relating to A.R. Even if the note had some ability to advance petitioner's defense to the charges involving A.R., it had no ability to advance his defense to the charge involving B.R., and that is the only charge on which petitioner was convicted.[3] Against the limited probative value of the note with respect to the charge upon which petitioner was convicted stands significant evidence of his guilt. The victims testified extensively regarding petitioner's conduct, and their testimony was consistent with their prior statements, belying petitioner's claim that their allegations were fabricated. More notably, petitioner himself admitted in a videotaped interview that he engaged in sexual conduct with the victims, and in particular that B.R. placed her mouth on his penis. In light of this substantial evidence of guilt and the limited probative value of the note with respect to the charge involving B.R., the exclusion of this evidence did not "infringe upon a weighty interest of" petitioner, *Scheffer*, 523 U.S. at 308, by excluding evidence that, evaluated in the context of the entire record, would have "'create[d] a reasonable doubt that did not otherwise exist.'" *Blackwell*, 459 F.3d at 753 (quoting *Washington*, 255 F.3d at 47). Thus, the Michigan Court of Appeals's rejection of this claim was reasonable, and petitioner is not entitled to habeas relief.

---

[3]Respondent argues that, because this evidence related only to A.R., and petitioner was acquitted of the charges involving A.R., petitioner's claim is moot. The Court should reject this argument. Although petitioner's acquittal on the charges relating to A.R. affects the analysis of whether the exclusion of the note deprived him of his right to present a defense, it does not render the claim moot. Petitioner argues that the note could have affected the jury's assessment of the credibility of both victims, and thus "the fact that petitioner was acquitted of" the charges relating to A.R. "does not [necessarily] mean that he was unaffected by the error." *Redeker v. Neven*, No. 2:12–cv–00397, 2014 WL 953553, at *16 (D. Nev. Mar. 11, 2014).

12

Nor can petitioner show that the exclusion of this evidence deprived him of his right to confront the victims. In *Davis*, *supra*, the Court held that the Sixth Amendment right to confront witnesses guarantees a criminal defendant the right to cross-examine adverse witnesses to expose bias and motivations for testifying. *See Davis*, 415 U.S at 315-16; *see also*, *Delaware v. Van Arsdall*, 475 U.S. 673, 678-80 (1986). However, the *Davis* Court limited its Confrontation Clause decision to those facts going to a witness's bias or motive in testifying, as opposed to general attacks on credibility. The Court's decision in *Van Arsdall* was similarly limited. Indeed, in his concurring opinion in *Davis*, Justice Stewart emphasized that the *Davis* "Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination" concerning past convictions. *Davis*, 415 U.S. at 321 (Stewart, J., concurring). Thus, there is no clearly established federal law as determined by the Supreme Court, within the meaning of § 2254(d)(1), which establishes a criminal defendant's right to cross-examine a witness to expose issues relating to general credibility, as opposed to bias and motives for testifying. As the Sixth Circuit has explained:

> although *Davis* trumpets the vital role cross-examination can play in casting doubt on a witness's credibility, not all conceivable methods of undermining credibility are constitutionally guaranteed. In particular, the *Davis* Court distinguished between a "general attack" on the credibility of a witness–in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"–and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Davis*, 415 U.S. at 316). The Court in *Davis* found only the latter, particularized attack on bias and motivation, to be a protected aspect of the right to confrontation. *See Boggs*, 226 F.3d at 737. As the Sixth Circuit explained in *Boggs*,

13

"[c]ourts after *Davis* and *Van Arsdall* have adhered to the distinction drawn by those cases and by Justice Stewart in his concurrence–that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." *Boggs*, 226 F.3d at 737; *see also*, *Quinn v. Haynes*, 234 F.3d 837, 844-45 (4th Cir. 2000); *Reiger v. Christensen*, 789 F.2d 1425, 1433 (9th Cir. 1986). Here, there is no question that the area of cross-examination which counsel for petitioner sought to explore through introduction of the note went to general credibility, rather than to a bias or motive for testifying. Thus, under *Boggs*, this restriction on cross-examination did not infringe on petitioner's Sixth Amendment confrontation rights. It matters not that the credibility of the victim was central to the prosecution's case:

> No matter how central an accuser's credibility is to a case . . . the Constitution does not *require* that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct. In other words, [petitioner]'s argument that credibility is crucial to this case, and that therefore any evidence bearing on credibility must be allowed in, simply does not reflect Sixth Amendment caselaw. Under *Davis* and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser.

*Boggs*, 226 F.3d at 740 (emphasis in original). Moreover, even if exclusion of the note constituted a Confrontation Clause violation, for the reasons explained above in connection with petitioner's right to present a defense claim the exclusion of the note did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, and thus any error was harmless. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Admission of Expert Testimony*

Petitioner next contends that he was denied a fair trial by Dr. Tamburello's testimony that B.R. and A.R. had "probable pediatric sexual abuse with a normal exam." The court of appeals

determined that this testimony was improperly admitted as a matter of state law, explaining: "Dr. Tamburello's diagnosis was based solely on what she was told by the children and not the medical examinations. Because Dr. Tamburello's diagnosis was not based on 'any findings within the realm of [her] medical capabilities of expertise' her testimony constituted improper vouching for the credibility of B.R. and A.R." *Gillen*, 2012 WL 1698376, at *3 (quoting *People v. Smith*, 425 Mich. 98, 112, 387 N.W.2d 814, 819-20 (1986)) (alteration in original). Nevertheless, the court concluded that petitioner was not entitled to relief because the error was harmless:

> Defense counsel emphasized on cross-examination that the diagnosis was based on what the girls said. B.R. and A.R. testified and their testimony did not have to be corroborated. MCL 750.520h. The trial court instructed the jury that it did not have to believe the expert's opinion and they should think about the facts given for the opinion. Finally, defendant indicated in his interview that there was sexual contact between him and the girls and that B.R.'s mouth was on his penis. With this substantial evidence, defendant cannot show that even if Dr. Tamburello's expert testimony was inadmissible and plain error, that it affected the outcome of the trial.

*Id*. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[4]

Regardless of whether Dr. Tamburello's opinion was improperly admitted as a matter of state law, petitioner cannot show that the admission of the testimony deprived him of a fair trial. Petitioner argues that Dr. Tamburello's diagnosis was used to improperly bolster the testimony of the victims, in effect commenting on their credibility. Even if the evidence was inadmissible as a

---

[4]Respondent contends that this claim is barred by petitioner's procedural default in the state courts. While procedural issues in a habeas case should ordinarily be resolved first, procedural default is not jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because it is clear that petitioner's claim is without merit, the Court may deny the claim on the merits without addressing respondent's procedural default argument.

matter of state law, or as a matter of federal evidence law, petitioner cannot show that the introduction of this evidence deprived him of due process or any constitutional right. On the contrary, "[b]olstering claims have been (expressly) held not to be cognizable on federal habeas review." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *cf. Regan v. Hoffner*, 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002) (Friedman, J.). Moreover, as the court of appeals held, any error in the admission of this evidence was harmless. It was clear to the jury, and indeed undisputed by the prosecutor, that Dr. Tamburello's diagnosis was based solely on the statements of the victims. Thus, the jury could not have accepted Dr. Tamburello's diagnosis without also accepting the credibility of the victims. But accepting the credibility of the victims would have doomed petitioner's case, as they testified extensively at trial regarding the sexual abuse. And in any event, by acquitting petitioner of the charges related to A.R. and convicting him only of the charge relating to B.R. to which petitioner expressly admitted in his police interview, it is clear that the jury did not accept Dr. Tamburello's opinion. From the evidence at trial and the jury's verdict, it is clear that the jury was swayed primarily by petitioner's statement to the police, and Dr. Tamburello's diagnosis did not in any way relate to the jury's assessment of petitioner's statement. It is thus clear that Dr. Tamburello's diagnosis did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, and thus any error was harmless. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §
2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of
Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not
issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory
committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either
grant or deny the certificate of appealability at the time of its final adverse order, I include a
recommendation regarding the certificate of appealability issue here.

    2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the
Court should also conclude that petitioner is not entitled to a certificate of appealability.  As
explained above, petitioner is not entitled to habeas relief solely on the basis of an error in the
application of state evidence law.  Rather, petitioner must show that the error violated a specific
constitutional right, or deprived him of a fundamentally fair trial.  As explained above, given the
limited probative value of the note and the evidence against petitioner, and in light of the fact that
any cross-examination regarding the note would have gone only to the general credibility of the
victims, petitioner cannot show that the exclusion of the note deprived him of his right to present
a defense or his right to confront the victims.  Thus, the resolution of this claim is not reasonably
debatable. Similarly, because testimony bolstering another witness's testimony has never been held
to constitute a basis for habeas relief, the resolution of the claim relating to Dr. Tamburello's
testimony is not reasonably debatable.  Finally, even if there was error in either the exclusion of the
note or the admission of Dr. Tamburello's diagnosis, for the reasons explained above it is not
reasonably debatable that any error was harmless in light of the evidence presented at trial.

Accordingly, the Court should deny petitioner a certificate of appealability.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: April 3, 2014                    s/Paul J. Komives
                                       PAUL J. KOMIVES
                                       UNITED STATES MAGISTRATE JUDGE


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 3, 2014.


                                       s/ Kay Doaks
                                       Case Manager